**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**VIRGINIA FENNER,**

**Plaintiff,**

**v.** **Civil Action No. 2:05-cv-00604**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

**Defendant.**

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the court on Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Virginia Fenner (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on April 5, 2004, alleging disability as of May 12, 2001, due to herniated and

bulging disks at L-4 and L-5. (Tr. at 55-57, 68.) The claims were denied initially and upon reconsideration. (Tr. at 33-37, 365-367.) On October 22, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 44.) The hearing was held on March 17, 2005 before the Honorable Arthur Conover. (Tr. at 385-409.) By decision dated April 29, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-21.) The ALJ's decision became the final decision of the Commissioner on July 5, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On July 26, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2005). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§

404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2005). The Commissioner must show two things: (1) that the claimant, considering claimant’s age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists

in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from a severe low back impairment. (Tr. at 14.) At the third inquiry, the ALJ concluded that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 15.) As a result, Claimant cannot return to her past relevant work. (Tr. at 15.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as rental clerk, sales attendant, food and beverage order clerk, and surveillance system monitor, which exist in significant numbers in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19-20.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less

> than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 48 years old at the time of the administrative hearing. (Tr. at 385.) She has a high school education. (Tr. at 74.) In the past, she worked as a deli clerk. (Tr. at 69.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ did not give proper weight to the opinions of treating physician Tomas Vigo,

M.D., who found that Claimant could not sustain work for an eight-hour day; (2) the record supports Dr. Vigo's opinions, and does not contain the inconsistencies determined by the ALJ; and (3) the ALJ erred in failing to consider Claimant's obesity alone or in combination with her other impairments. (Pl.'s Br. at 9-13.)

The Commissioner responds that the ALJ properly weighed the evidence, and that the opinion was supported by substantial evidence in all respects. (Def.'s Br. at 7-15.)

1. Treating physician

Claimant argues that the ALJ erred in declining to adopt the functional limitations prescribed by her treating physician, Tomas Vigo, M.D.; in particular, his opinion that she was incapable of working a full 8-hour day. (Pl.'s Br. at 9-11.) Dr. Vigo completed a questionnaire on October 1, 2004 indicating that Claimant could only lift 15 pounds; could sit, stand or walk a maximum of 40 minutes without a break; could only sit a total of 3 hours in an eight-hour day; could only stand or walk a total of 2 hours in an eight-hour day; should lie down at unpredictable intervals during the day, twice daily for about 30 minutes; and could not push or pull with her legs. (Tr. at 280-281.) He indicated that Claimant could occasionally climb, balance, stoop, crouch, kneel and crawl. She could not work a full eight-hour day. As the medical findings in support of this assessment, Dr. Vigo indicated "MRI of lumbar spine done on 1-10-04 showed a herniated disc at L4 L5 level."

(Tr. at 281.)

The ALJ rejected this opinion because it was not supported by the objective evidence of record. (Tr. at 17.) He noted that while the MRI did show herniated discs, there was no evidence of any spinal stenosis, and neurosurgeons reported that Claimant was not a surgical candidate because of the lack of neurological deficits. In addition, the ALJ noted, the only limitation Dr. Vigo placed on Claimant through January 2005 was to avoid heavy lifting. (Tr. at 17, citations omitted.) Finally, the ALJ found that the restrictions Dr. Vigo imposed were contradicted by Claimant's hearing testimony, wherein she admitted that she was capable of taking care of her disabled husband and grown autistic child despite her condition. (Tr. at 17.) Citing SSR 96-2p, 20 C.F.R. 404.1527(d)(2) and 20 C.F.R. 416.927(d)(2), the ALJ stated that he was unable to give any weight to Dr. Vigo's opinions. (Tr. at 17.)

These regulations provide that in evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)(2005). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other

substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2005). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)(2005). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ complied with these regulations. He correctly noted that while the MRI indicated disc herniation, there was no objective evidence linking that herniation to the functional

limitations Claimant alleged. First, as he stated, the laboratory results did not support such a restriction. Second, the neurosurgeons who evaluated Claimant did not impose such restrictions, but instead found that Claimant was not a surgical candidate due to the absence of neurological deficits. (Tr. at 17, citing Exhibit 5F (tr. at 182-190), 10F (tr. at 272-273), and 11F (tr. at 274-277).)

The cited records in Exhibit 5F indicate that upon examination in October, 2003, Claimant had normal motor, sensory and cerebellar testing, no weakness, no reflex changes, and no pathological reflexes. (Tr. at 183.) She had a positive straight leg raising test at 45 degrees. Id. Neurosurgeon Panos Ignatiadis, M.D. interpreted Claimant's MRI as moderately positive, but found nothing to indicate surgery. Instead, he recommended physical therapy. (Tr. at 185.) Records within this exhibit from Dr. Vigo reflect that he advised no heavy lifting in June, 2004, but gave no other restrictions; and that he deemed no aggressive treatment necessary. Dr. Vigo stated that Claimant had reached maximum medical improvement. (Tr. at 189.)

Records within cited Exhibit 10F include a neurological examination by Frederick H. Armbrust, M.D. of Neurological Associates, Inc. on September 30, 2004. (Tr. at 272.) Dr. Armbrust noted that range of motion in Claimant's back was moderately limited on forward bending and extension. Straight leg

raising in the seated position was negative. Claimant could heel and toe walk. (Tr. at 271.) Upon neurologic examination, Claimant had no neurological deficits, and had "excellent strength", symmetric reflexes, and no sensory impairment. (Tr. at 273.) Dr. Armbrust found no evidence of nerve root compression at the inferior L5-S1 level. Based on his examination and these facts, Dr. Armbrust's impression was low back pain, "possibly in part related to herniated vertebral disc L4-5." (Tr. at 273.) Far from restricting her activity, Dr. Armbrust (like Dr. Ignatiadis) recommended physical therapy or a trial of epidural steroid injections. Id.

Cited Exhibit 11F contains the same records from Dr. Ignatiadis discussed above.

As stated, after reviewing these records, the ALJ also properly considered the lack of consistency between the opinions Dr. Vigo gave in this questionnaire and the mild restrictions he himself had placed on Claimant's activities in his course of treatment----which included only a restriction from heavy lifting. (Tr. at 17, citing records, supra.) Finally, the restrictions Dr. Vigo proposed were inconsistent with Claimant's level of daily activity.

Claimant vigorously argues that Claimant's MRIs of April 25, 2001 and January 12, 2004 constitute objective medical evidence in support of Dr. Vigo's restrictions. (Pl.'s Br. at 9-10.) Claimant's

MRIs of these dates do indicate herniated and bulging discs at L4, L5. (Tr. at 158-159; 198-199.) Claimant is also correct that the 2004 MRI noted "extradural indentation along the ventral border of the thecal sac at L3-L4 level and left sided nerve roots at L3-L4 level." (Tr. at 198-199.) However, these results do not per se support Dr. Vigo's restrictions as Claimant argues. Claimant clings to the MRI results as objective medical evidence bolstering her doctor's opinion; however, it is not just the fact of an abnormality, but the degree and demonstrated effect of the abnormality that is important to the question of functional limitation. In this case, as the ALJ observed, much of the medical evidence and Claimant's wide range of daily activities revealed that despite these MRI findings, she was not as limited as Dr. Vigo prescribed. (Tr. at 17.)

Claimant then argues that Dr. Vigo's opinions were consistent and supported by other parts of the record. However, much of the remaining evidence contradicts his opinions, and is quite persuasive. For example, the ALJ considered the reports of physicians with the Disability Determination Service, who concluded that despite the above MRI results, Claimant was capable of light work with occasional postural activities and with avoidance of temperatures and hazards. (Tr. at 18, citing Exhibit 7F (tr. at 249-256, Physical Functional Capacity Assessment of James K. Egnor II, M.D. dated May 20, 2004); Exhibit 8F (tr. at 257-264, Physical

Functional Capacity Assessment dated May 21, 2001).) The ALJ acknowledged the lesser weight to be afforded opinions of these non-treating, non-examining physicians; yet noted that their opinions were strengthened by the consistency of their findings with the remainder of the record. (Tr. at 18.)

The ALJ then determined that Claimant's hearing testimony was less than credible regarding the extent of her symptoms and limitations. (Tr. at 18.) Claimant did not require assistance with grooming or hygiene; she cooked light meals and performed light household chores. She was also able to care for her disabled husband and her adult autistic child. (Tr. at 18.)

The ALJ determined that Claimant's activity level and the results of measurable findings in clinical examinations and diagnostic testing were more consistent with light work than with the total disability Claimant asserted. Id. The inquiry for the court is not whether *all* of the evidence supports the ALJ's conclusions, but rather, whether his conclusions are supported by substantial evidence. In this case, the ALJ gave sound reasons for rejecting Dr. Vigo's restrictions. His reasoning comported with the law and was backed by the substantial evidence found in consultant's reports and the testimony of Claimant herself. Dr. Vigo's opinion stands alone and in contrast to the remainder of the record. Accordingly, the ALJ's decision to afford Dr. Vigo's opinion little weight was supported by substantial evidence and

will be affirmed.

2. Inconsistencies in the record

Claimant argues that Dr. Vigo's report is consistent with the objective medical evidence of record and with Claimant's own testimony regarding her daily activities. (Pl.'s Br. at 11.) The consistency of the objective medical evidence and Dr. Vigo's report are discussed in detail above. However, in this portion of her Brief, Claimant argues further that her testimony concerning her activity level supports, rather than contradicts, the restrictions Dr. Vigo imposed, because her husband and son helped her with her activities, and because she took breaks to lie down between activities. Id. at 11-12. However, Claimant also indicated that she attended to her personal needs, paid bills, washed dishes, managed bank accounts, went shopping, read books and magazines, and went walking. (Tr. at 101-103.)

The ALJ's conclusions as to a Claimant's credibility are to be given great weight. Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984). Courts are not to substitute their judgment for the judgment of the ALJ as the fact-finder. This court finds that the ALJ properly considered Claimant's credibility pursuant to Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); his opinion will not be disturbed.

As discussed above, the ALJ properly discounted Dr. Vigo's opinions for several reasons, not just its comparison with

Claimant's statements as to her activities. The opinion reflects that the ALJ carefully considered the record as a whole. Indeed, while he considered the reports of consultative examiners who found that Claimant could perform light or sedentary work, he accommodated her with even greater postural, exertional, and environmental limitations than they prescribed. (See tr. at 18, tr. at 250-25, tr. at 258-261.) The court finds that the ALJ properly considered and resolved the inconsistencies of which Claimant complains, and that his decision was well-grounded in substantial evidence.

3. Obesity

Claimant alleged obesity as an impairment at her hearing. She weighed 187 pounds and was 66 inches tall, indicating a body mass index of 30 (obese). (Tr. at 288, 382.)

Claimant alleges that her obesity "can and probably does" exacerbate her back and leg pain arising from her herniated disc, and that the ALJ failed to properly consider her weight as an impairment. (Pl.'s Br. at 12.) This argument reflects Claimant's failure to meet her burden of proof. Claimant must bring forth evidence to support her claims; in particular, the effect of obesity upon her functional capacity and her other impairments. SSR 02-1p states that "obesity in combination with another impairment *may or may not* increase the severity or functional limitations of the other impairment...[the ALJ shall] not make

assumptions about the severity or functional effects of obesity combined with other impairments, [but shall]....evaluate each case based upon the information in the case record.”[emphasis added].

Here, as the Commissioner points out, Claimant fails to cite any evidence to support her assertions that her weight restricted her or impacted her other impairments. She did not allege obesity in her application, nor her request for reconsideration; and did not testify that she was obese, nor that her weight was a problem. (Tr. at 68, 107, 383-409.) Dr. Vigo’s notes describe Claimant as “well developed and well nourished” rather than obese. (Tr. at 194-95, 202-03, 282, 284, 286.) Likewise, Dr. Ignatiadis and Dr. Armbrust found no neurological deficits upon examination, despite Claimant’s weight. (Tr. at 183, 185, 273.) The state agency medical reviewers were apprised of Claimant’s weight, yet concluded nonetheless that Claimant could engage in light work. (Tr. at 256, 264.)

Claimant has failed to demonstrate any effect her weight had upon her functional capacity or any of her other impairments. As such, the ALJ’s failure to discuss obesity was harmless error which does not warrant reversal or remand. Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)(“No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different

result.”). Our Court of Appeals, in a number of unpublished decisions, has taken the same approach. See, e.g., Bishop v. Barnhart, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct 20, 2003); Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001); Spencer v. Chater, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

After a careful consideration of the evidence of record, the court finds that the Commissioner’s decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff’s Motion for Judgment on the Pleadings is **DENIED**, Defendant’s request for Judgment is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to provide copies of this Order to all counsel of record.

**ENTER:** September 21, 2006

Mary E. Stanley
United States Magistrate Judge